JOSEPH DILLEY *vs.* FREDERICK SHIPLEY, LEWIS D. BEALL AND S. A. LECKEY.—*June* 1846.

*S.* recovered a judgment against *K. & Co.*, before a justice of the peace. Afterwards, *D.* and *B.* went before the justice to supersede the same; which appeared by an entry on the foot of the judgment, as follows : "Superseded by *D.* and *B.* for twelve months." The act of 1825, ch. 223, sec. 2, which gives the form of the entry of supersedeas, requires the insertion of the date of confessing it, as a part of the entry, which in this case was omitted. Upon a bill, filed by *D.* and *B.*, to restrain execution upon the supersedeas, after the lapse of twelve months, the county court dissolved the injunction as to *D.*, and made it perpetual as to *B;* HELD, upon appeal by *D.*, that it ought to have been made perpetual as to him.

APPEAL from the Equity side of *Allegany* county court.

The bill in this cause was filed on the 8th May 1843, by *Joseph Dilley* and *George W. Bedford*, and alleged, that *Frederick Shipley* obtained two judgments, against *George H. Krebs & Co.*, which said *G. H. K.* is since dead, and insolvent; and *Charles W. Krebs*, the only other partner

in said firm of *G. H. K. & Co.*, is also now insolvent. The said *F. S.* recovered the said judgments before one *S. A. Leckey*, a justice of the peace of the said county, against the said *G. H. K. & Co.*, on the 2nd April 1842. One for the amount, of $34.15, debt, with interest and costs; and the other, for $82.56, debt, &c. That the said *Joseph Dilley* and *G. W. B.*, were entered by the said *S. A. Leckey*, as superseders in the said judgments, in the words and figures following, to wit, "superseded by *Joseph Dilley* and *George W. Bedford* for twelve months;" is used the same form in each case, as will appear by reference to the copies herewith filed; that the said *F. S.* has caused to be issued an execution or *fi. fa.*, on each of the said judgments, against the superseders of the said judgments, and has placed the the same in the hands of *Lewis D. Beall*, a constable, in and for said county; who has seized and taken by virtue of said executions, the goods and chattels of one of your orators, the said *G. W. B.*, and is now about to expose the same to public sale to satisfy said judgments. Your orators are advised, that the said supersedeas' judgments are illegally taken, and informally entered, by the said *S. A. L.*, and that the same are illegal and void, and that your orators are not in any manner bound thereby; the same not having been taken and entered in the manner and form prescribed by the act of 1825, ch. 223, sec. 2, that the said judgments are illegal and void, for other reasons, in law and fact.

Prayer, that the said *F. S.*, *S. A. L.* and *L. D. B.*, may answer, and by injunction be restrained from further prosecuting the said judgments, and from selling the goods and chattels of your orators, under the said executions, or either of them; and from issuing, having issued, or serving on your orators, any executions whatever, upon the said judgments aforesaid, or either of them; for *subpœna*, and for other and general relief, &c.

With the said bill were exhibited the following copies of the judgments.

*Frederick Shipley vs. George H. Krebs & Co.*—April 2nd, 1842. Judgment in favor of plaintiffs for $34.15, dolls. debt,

7      v.4

interest from February 19th, 1842, and costs, 58⅓ cents. Superseded by *Joseph Dilley* and *George W. Bedford*, for twelve months. A true copy, as witness my hand and seal. *S. A. Leckey.*—Seal.

*Frederick Shipley vs. Geo. H. Krebs & Co.*—April 2nd, 1842. Judgment in favor of plaintiff for $82.56¼, dolls. debt, interest from February 19th, 1842, and costs, 83⅓. Superseded by *Joseph Dilley* and *George W. Bedford*, for twelve months. A true copy, as witness my hand and seal. *S. A. Leckey.*—Seal.

On the 8th May 1843, the county court, (MARSHALL, A. J,) ordered an injunction to issue.

The answer of *Frederick Shipley*, after admitting the facts in the bill alleged, stated, that shortly after the entry of said complainants, by the said *S. A. Leckey*, as superseders upon said judgments, to wit, on the 25th April 1842, a deed of mortgage was made between the said *G. H. K.* and the complainant, *J. D.*, in which it is recited, that the complainant *J. D.* had become surety by way of supersedeas, for the said *G. H. K.;* and for *G. H. K.* and *C. W. K.*, in certain judgments in said deed particularly mentioned; among which said judgments, are the two against *G. H. K.*, and *C. W. K.*, at the suit of *F. S.;* and this defendant is advised, that the complainant, *J. D.*, is estopped from averring against the validity of said supersedeas. This defendant further answering, states, as to the complainant, *Joseph Dilley*, that by certain articles of agreement, under seal, entered into between a certain *John Williams* and *Charles W. Krebs* of the first part, and the complainant, *Joseph Dilley*, of the second part, dated the 24th October 1842, it is, among other things, agreed, by and between the said parties, in the words following, to wit : that the said *J. W.* and *C. W. K.*, for and in consideration of the premises, and for and in consideration of the sum of five dollars, in hand paid, to the said *J. W.* and *O. W. K.*, the receipt whereof is hereby acknowledged, have bargained and sold, covenanted and agreed, to and with the said *J. D.*, his heirs and assigns, as follows, that is to say: the said *J. W.* and *C. W. K.*, shall continue to work the said steam saw mill,

under the control of the said *C. W. K.*, and the said *J. D.*, jointly; and the lumber, when cut, shall be delivered to the said *J. D.*, at the mills; and shall be the property, and in possession of the said *J. D.*, as soon as the same shall be cut and felled upon the said premises, for the uses and purposes hereinafter mentioned. And the said *J. D.*, by and with the advice and management of the said *C. W. K.*, shall transport and convey the said lumber to market to *Cumberland*, or any other place where they, the said *J. D.* and *C. W.*, may think it advisable to convey the said lumber. And the said *J. D.* shall sell the said lumber, and from the proceeds thereof shall, first, indemnify himself for and against certain liabilities, which he is under in consequence of having superseded certain judgments, particularly described and set forth in a deed of mortgage from *G. H K.* to the said *J. D.*, bearing date the 25th April 1842. This defendant further answering, states, that among the liabilities in said deed of mortgage, referred to in said articles of agreement, are these same judgments of supersedeas, in favor of this defendant, and not other and different judgments. This defendant further states, that he has been credibly informed and believes, that the said *J. D.*, by virtue and in pursuance of the contract in the said articles of agreement contained, went on and cut down a large quantity of timber, and sawed the same into lumber, which he brought to market, and made sale thereof, or a part thereof; and that the proceeds of such sales were more than sufficient to pay off and satisfy the judgments above referred to. This defendant is advised, that the complainant *J. D.* is estopped, both at law and in equity, from averring, against the validity of said judgments of supersedeas.

This defendant, with his answer, filed the mortgage and articles of agreement referred to therein, but the proof showed that *Dilley* was not indemnified, under either, for his suretyship on account of *G. W. K.* and *Co.* to the defendant *F. S.*, and their other creditors, who were also mentioned in the mortgage.

The answer of *L. D. Beall* admitted, that he was proceeding to enforce the judgments by execution then in his hands.

The answer of *S. A. Leckey*, stated, that the said *D.* and *B.* came before him, and informed him, that they wished to become superseders in said judgments; and at their request, he made the entry on his docket in the usual and customary manner, and as set forth in complainants' exhibits; that said complainants had knowledge of said entry so made, and did not object to the same. This defendant believes, that at the time the complainants became such superseders, that it was understood that the name of *B.* was only used to comply with what was thought to be the law in relation to supersedeas, to wit, that two persons were required; and that it was not intended, as between *D.* and *B.*, that *B.* should be at all liable, but it was distinctly understood, that *D.* intended that he should be liable, as he *D.* had received from *G. H. K.*, a bill of sale of certain property, therein mentioned, and which bill of sale or mortgage was executed before said *D.* would agree to supersede the two judgments in favor of *S.*, and others, particularly mentioned in said deed of mortgage.

On the 10th June 1844, the cause standing ready for hearing, on the motion to dissolve the injunction, the county court, (BUCHANAN and MARSHALL, A. J.,) ordered the injunction, as to the complainant, *Dilley*, to be dissolved, but as to *Bedford*, to be made perpetual.

From this order *Joseph Dilley* appealed to this court.

The act of 1825, ch. 223, sec. 2, directs the justice of the peace to repeat the form of a supersedeas to the defendant and his securities, and that he shall enter the same in his docket, and also endorse on the judgment :—"Superseded by ———— this ——— day of ———— for ——— months."

The cause was argued before ARCHER, C. J., DORSEY, CHAMBERS, SPENCE, and MARTIN, J.

By McKAIG for the appellant.

By PEARRE and PRICE for the appellees.

DORSEY, J., delivered the following dissenting opinion, in which SPENCE, J., united.

That the grounds of my dissent from the opinion of the court may not be misunderstood, I proceed briefly to state them.

I hold it to be a clear principle of chancery jurisdiction, that before a court of chancery will, by way of injunction, interpose its authority to prevent the execution of judicial process, issuing from a court of law, of competent jurisdiction, it must be made to appear, that the service of such process is against equity and conscience; or that it would exact from the party complainant, the performance of that, which it would be inequitable and unconsciencious to demand of him.

Was such the nature and effect of the process issued in this cause, to stay which the injunction was granted, and which has been made perpetual by the decree of a majority of this court, is, I humbly conceive, the question that must determine the appellant's right to the injunction he obtained?

It is an undeniable fact, patent as well upon the face of the bill, as upon the answer and proofs in the cause, that the only objection to the supersedeas judgments, the only ground upon which their execution could be staid, was the mistake of the magistrate, in not stating the date when the judgments were confessed before him. Every other requisition, to the validity of the judgments confessed, was fully complied with. No pretence that every thing was not done on the part of the appellant, which the law required, to give efficacy to the judgments. Not even an intimation that he has been prejudiced or injured, by this mistake of the justice of the peace, or that the appellant's responsibilities have been increased thereby; or that payment of the judgments is about to be enforced against him, before the expiration of the stay of execution, to which he would have been entitled, had the magistrate, in taking the supersedeas, in all things performed his duty. There was not the semblance of any such ground for equitable relief, disclosed in the appellant's case. Every principle of equity, justice, and conscience, called upon him to do that, which the process of execution, complained of, was designed to enforce.

Is it, then, consistent with the principles of equity jurisprudence, that a court of equity, of conscience, should, by its writ

of injunction, arrest the arm of the law, when exacting the performance of such a duty?

It should be remembered, that a writ of injunction in aid or protection of legal rights, does not issue as a matter of course, *ex debito justitiæ;* but that it is a high prerogative writ, resting in the sound discretion of a court of chancery; to be issued, only, in obedience to the dictates of public policy, or of equity and conscience. In aid or protection of legal rights, it never issues, unless at the promptings of public policy, or equity and conscience. The appellant *can invoke no such friendly influ*ence in support of his application.

I therefore think, that the injunction, in this case, issued improvidently; and that the order of the county court dissolving it, ought to be affirmed.

Instead of granting an injunction to the appellant, to restrain proceedings at law, on the judgments, against him, a court of equity ought to have listened, with a willing ear, to an application from the appellee, for an injunction to restrain the appellant from setting up at law, this mistake of the magistrate, as a defence against the execution of the judgments.

The views I have taken of this case, renders it unnecessary for me to examine various questions discussed in the argument, and, especially, whether the appellant had any standing in equity; on the ground that adequate relief could have been obtained by him at law, on a motion, before the magistrate by whom they were issued, to supersede the executions; or by a motion to quash them, upon their return.

By the COURT:—

The order of the county court is reversed, as to the appellant; and the injunction made perpetual, with costs, in his favor.

DECREE REVERSED WITH COSTS.